Ladies and gentlemen, before proceeding with our scheduled business, we have one of the family occasions that we enjoy, which is the admission of one of our law clerks to the Bar of the Court. I suspect Judge Prost may have a motion on that. Thank you. I move the admission of Matthew Allen Penge, who is a member of the Bar and good standing of the High Court of Texas. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. Matt's been a clerk in my chambers for a year. He carries on an important tradition that we have, which is almost always to have one of our clerks be from Texas. And Matt is from Texas, so if you're about him, he's from Texas. It's been a pleasure to have him. He's got, he's a talented young man who brings a lot to the job, including a sense of honesty and decency, which I think we all appreciate. Well, we have the motion, and I will wait beneath for a second. I'll consult with another panel member. We have another Texan in the bar room. We haven't had an alliance between Texas and Massachusetts since 1964. But I will second that motion and welcome you to the bar. The motion is granted. Mr. Penge, would you step forward and take the oath from the Court? Please raise your right hand. Do you swear or affirm that you will comport yourself as an attorney and counsel of this Court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations, and welcome to the bar of the United States Court of Appeals for the Federal Circuit. Welcome to the bar, Mr. Penge. May you practice well and successfully. We have four cases on the calendar today. Two cases involving claims against the government on the court of federal claims, an application to the district court, a government employee case that is being submitted on a breach and will therefore not be argued. The first case is St. Christopher Associates v. United States, 2007-5069. Mr. Penge. Thank you, Your Honors. May it please the Court, Your Honors. My name is Harry Kelley. I am counsel for the plaintiff in this case, St. Christopher Associates Legal Partnership. Your Honors, there are many, many fascinating facts that have pervaded this case, but fortunately for the purposes of the present discussion this afternoon, we're talking about a narrow issue, and that is simply whether HUD has the contractual obligation to approve rent-increased requests for a Section 236 property, can refuse or fail to consider such a request when submitted by an owner such as us. So let me see if I understand. You're not contesting the judge's conclusion that the statute and regulations can be handled by themselves. You're not going to mandate that. That's correct. You're just saying that they, and in order to reach the conclusion you wish us to reach, which is there's some obligation for giving oral hearing or consideration, is not in the contract, but it's in the contract insofar as the contract incorporates the statute and regulations. The way I would phrase it, Your Honor, is that I think the statute issue Excuse me. May I interrupt? Is that a counter? Oh, I'm sorry. All right. You're a little bogus. I'm sorry. Your Honor, the way I phrase it is this. I think if you look at the express language of the regulatory agreement between the parties, look at Section 4A and look at Section 4L specifically. There are a few other provisions that are relevant. Those are the chief ones to consider today. They impose an express obligation on HUD to approve rent increase requests or to approve rents for the property. It seems to me both as a matter of language, of logic, and of legal necessity that if an agency of federal government such as HUD has that express contractual obligation, then as a prerequisite to that, it must consider the rent increase request. Then it has an obligation to approve rents, right? I should say that the only rents that can be charged are those which HUD approves. Right. And this is not a case as some others have been in other jurisdictions where we're contesting a factual determination at the end of the day whether or not HUD did the right thing. We're simply asking whether here if HUD is going to exercise its duty of approving the rents when an owner files up a request, HUD must in the first instance it seems to me necessarily at least consider that request. I don't understand how the agency can exercise the other portions of its express contractual obligations here without in the first instance considering the request. It's a necessary prerequisite. And I do think that that is an express duty that the agency has in the contract insofar as it has a duty to approve rents to in the first instance consider it. But where does that take you though in terms of damages relief? You're not suggesting that they had an obligation to approve that request. They, I would not say that they, obviously for my client's point of view as a factoring writer, we would believe that had the agency looked at the application that was submitted, it would include that it indeed should have. But that's not my question. My question is whether or not you can enforce some requirement that they would approve a request that you made that's an enforceable obligation. I believe that what we can enforce is the obligation in the first instance to consider that. And since that's a first step, nothing else that the agency does in the first instance that's considered that request. None of the other relief or the obligations that really the agency has can- In other words, you want us to find which contract- Yes, ma'am. When you hand in a request for damages. I think that there may be some additional intervening matters that the government may have with respect to the party's respective obligations. But ultimately, that is the question that we seek to be on. We are seeking those damages which we believe flow as a proximate result of this government's- Damages being all the rents that you requested and the increase in debt. That's correct. Mr. Kelly, you're not asking for a taking type of damage. You're saying it's a contractual obligation which is breached by not considering the rent increase? That's in the first instance our argument, Your Honor. And that was the primary argument, which I think the plaintiff advances today. We have, indeed, also advanced an alternative argument to taking space from, where we believe that because if there is a situation such as this where the government is operating in a sovereign capacity, and I do think this is- After all, the document I'm talking about is called a regulatory agreement. And it is a contract not to purchase tenants or to bill papers, but to carry out sovereign interests of the government, which is to provide affordable housing to lower-income families in the nation. When the government is operating in that position, if it fails to take the action as a result of the failure of the action that it took here, my client was put in the position of providing housing for lower-income families on a basis that was not fair, not at the appropriate level. But I think that there was an invasion, if you will, of my client's property. But you voluntarily ended the program in 236, believe it or not. And under that program, you had a rent contract. Well, we have a rent contract. Under that specific aspect of it, did you give up that right to increase your rents? Well, I would say, Your Honor, that we agreed to abide by the terms of the contract, or rather, to allow the HUD to, in the final instance, approve the rent increase request that we wanted. But I don't believe that we abandoned the right to be able to say that the agency did not do what it should have done. But the government didn't take any action. It took no action. That was the problem, Your Honor. How can that be a failure? The issue is whether as a result or as a consequence of the government's inaction, its refusal to do what it should have done, we were in a situation where the government was essentially expressing a dominion and control over our property in a manner that was without contractual basis. It wasn't a fiscal taking? Well, not all of the takings are fiscal, Your Honor. Some takings- It's not a categorical taking. It is. Even if they took something by inaction, they didn't take all the value. They did not take all of the value, Your Honor, but this is a situation where, for a period of 40 years, we had to do a regulatory agreement with the government and subjected ourselves to a large battery of obligations. The taking in this instance, and I think that there are a number of decisions from this Court, would take the position that where there is a diminishing value and the financial interest, it doesn't have to be a- But that's already been- It's not a regulatory thing. You're still arguing on a regulatory taking, but that's fractured obligation when it falls upon the agents. It would be a regulatory taking in that instance. So what are the aspects of a regulatory taking that would be established as a partial taking? Well, I think that the case that we brought tonight would offer would be, for example, the sitting of a guidance decision. Parties in this instance, in this case, were subject to a regulatory agreement, and the parties to the sitting of a guidance decision were also subject to a regulatory agreement. Which is, you know, the series of cases that you talked about? My knowledge of all of the complaints that seem to be cases are similar, not necessarily exactly the same regulatory agreements, because they change from year to year at different points. And depending on which- They were talking about the repossession of real property. Was it- I don't understand your taking the claim, because I guess I understand your damages claim, but you would suggest that because you don't know whether they were approved yet. But there's nothing that obligates the government to grant damages, nothing whatsoever. And so you're saying that by not considering, I'm just not understanding what was taken. Well, I would say, Your Honor, that I think the taking arises where the government, I think if you recall, the Pennsylvania Coal Company case, they were talking about regulatory action which goes too far and may constitute a form of taking as well. It seems to me that this is not a far stretch to say that when the government fails to do what it should have done, a taking may arise. If at the end of the day, what the government gets is access to our property that is not properly compensated for, then I would submit that constitutes a taking. That's predicated on the fact that there was some obligation for them to grant damages. True, Your Honor. Going back to the contract, so you've got kind of two theories going. One is that we ought to incorporate the regulations and the handbook into the contract. But your view is even if we don't buy that, the contract in itself, the language of approval, inherently includes the obligation to consider it. Is that correctly saying? I'd say we would not say that the contract necessarily incorporates all the statutes and all the regulations in the handbook. But we would say that those should be examined. In the cases that we cited, we talked about the fact that when you are dealing with a document such as this, a regulatory agreement which carries out a sovereign person government, it's appropriate to look back at the statutes and the regulations to see what they envisioned, how they understood it, what they intended the obligations of the parties to be here. And that's why we invited the court to go back and take a look. But assuming we don't buy that, or at least we don't feel, we don't construe the court, the contract is necessarily incorporating the obligations of the statute and regulations of the handbook, then even if you're right that approval inherently requires the government to consider it, a request, there's no time frame. I mean, it seems to me you're asking us to renegotiate a contract for you. Because there's no time frame. Even if you're right, the government has to respond at some time. Is that four years, five years, ten years? Is there anything that necessitates them responding within a certain period of time? It would seem to me, Your Honor, that, again, the contract should be construed so as to be reasonable. And if an owner submits a rent increase request, to come back to us a year later seems to me pretty unreasonable. To come back two years later, even more unreasonable. But to never come back, to never respond at all, seems to me beyond the scope of what would need to be reasonable. Did you inquire as to why it was taken so long? I beg your pardon? Did you inquire as to why it was taken so long? We had been in contact with the agency for many years prior to this time, Your Honor. As of the time this rent increase request was filed, we had gone 13 years, yes, without receiving any rent increase request. The government had denied prior requests. So subsequent to this, there was a follow-up letter that was sent. And then a few months after that, we received not a response to this request for rent increase, but a notice of foreclosure. And I guess the owner considered that to be the government's response, as it was. But there was never any response made at all. I don't want to trivialize this, but let's assume, as happens, that I have kids who want to use the car. And they know the rule is they're not going to get to use the car unless I approve their use of the car. Does that mean inherently that every time they ask me to use the car, I am obligated to give them any answer? Because can't the answer be, don't ask me anymore, I'm not going to answer you unless I'm ready to give it to you, and then I'll let you know? I mean, what is the proof of the fact that I have the authority to prove it, necessarily obligating to respond to the check every time, to tell them yes or no every time they ask? Well, I would say, Your Honor, in cases such as the inspect car departments, we know the owner has a right to ask. And it is the situation that the owner asks for rent increase request every day. But most of them do it perhaps on an annual basis, or in many instances, over several years. The fact of the matter is that on the one hand, the owner cannot ask for more, for a rent increase. We can always ask, but he knows that unless he can demonstrate with good faith that there is a reason to grant the rent increase, HUD is likely to turn it down. So as a result, they will ask when they believe that they have the necessity. In this instance, it had been 13 years. And we feel that under the circumstances that our client acted in a commercially reasonable manner, the burden should be on HUD having received it to explain why it didn't do anything. Why did the burden on the contracting party put all that language in the agreement? This is a contracting division, Your Honor. You're forced to abide by the language which the agency provides. If the agreement itself couldn't put in, the rent increases would be implied two and three months. It's fairly easy to put in an agreement. And there are regulations which HUD published in the context of our earlier discussion, which I think if you look at the Part 245 regulations, which set out time periods and so forth, I think the owner had a reasonable expectation of where a regulatory agreement on the one hand says that the owner should be subject to the HUD regulations, that the agency itself would abide by its own terms as part of the contractual provisions. We'll move to your final time. I would thank you very much, Your Honor. Thank you. Ms. Floyd. Good afternoon. May it please the court. Plain language of the regulatory- Let me reiterate that I was a little confused by the record here. There was some suggestion that initially HUD said they had received the request, but then the government acknowledges in its brief does it not that they're not contesting the bond. That's correct, Your Honor. So we are to assume for our purposes- For these purposes- Yes, for these purposes the government received the request. The plain language of the regulatory agreement specifically provides that paragraph A provides that the HUD commissioner will approve the basic rental charge and also the fair market rental charge. I think the agreement was clear as to the requirement that they file a request for a rent increase, but is it fair for a participant in this program to wait five years to have no answer from HUD? In the meantime, should they have brought an APA type of an action forcing HUD to act on this request? Your Honor, that option was there. The agreement is, as I argued already on this case, does not require HUD to entertain a rent increase request. Nevertheless, there are provisions, regulations that set out what a rent increase request should look like. And if the owner complies with those requirements and HUD fails to satisfy those requirements or act on the request, then they can take an APA action. But HUD is one of the contracting parties. That's correct. Are both parties in the contract subject to a fair deal type of a situation where if I request a rent increase that I would be expecting an answer, not five years hence, but within a reasonable amount of time? Is that unreasonable for a party to anticipate? Your Honor, it's not unreasonable for a party to anticipate that in response. Nevertheless, it's not an obligation that was imposed upon HUD in the context of the contract itself. So there was no obligation. But HUD does have an obligation of a fair deal with the parties in the contract. HUD has obligations- I'm asking you, do you think it's fair to wait five or six years before an answer is given by one of the parties to the contract? You know they have no obligation to grant it, or at least to die to the request. Your Honor, that is what one would expect in an ordinary course of business, yes. Nevertheless, there are certain requirements under the contract. And while this is an argument that the court low never reached, our position was that they never complied with the regulatory requirements to submit a rent increase request. So independent of all of that, Your Honor, there are certain obligations under the regulations themselves that an owner must comply with, and they would not comply with in this instance. So you think that even if we agreed with the other side, we'd have to send it back so that the court could consider that alternative argument? Yes, Your Honor. Is the issue here, are they complaining that HUD didn't consider the request or that HUD didn't respond to the request? Because the two are not exactly the same thing. How do you see the complaint here? It does get conflated in my mind. And in briefing, I did not see that distinction. Certainly, they did make the argument at some point that the HUD was required to grant it, and we argued below that. That is not a requirement. If we were to agree that the regulatory and the regulations in the statute are incorporated by reference somehow in this contract, then we would agree that the government approves this right. Do you not consider the portions of the regulation as requiring a response in a particular period of time? Your Honor, our position is that because they never complied with the regulatory- Oh, that's the other issue. Yes. So the other issue governs that. But outside of that other issue, I mean, if you look at what the district court agreed without that, then there is, if the government agrees, there's some obligation in the regulations of the statute. In the regulations themselves, there's a discussion of a 30-day window. But in order to comply with that, there are certain prerequisites that the owner must satisfy. And none of these are not satisfied in this instance. There's no finding on the district, even though the court claims to have found that it had- That's correct, Your Honor. It never addressed that issue. The parties fully briefed it, but it was never reached by the court. Well, the agreement provides, as you quoted, that there should be a basic renter charge. And the statute defines a basic renter charge as the amount of each two operating projects. That pretty much applies to the inflationary environment interests. Does that also imply an obligation on the part of the private to respond to requests?  And although it's not a matter of the record here, the situation, this apartment was located in Hartford, Connecticut. And in fact, it was in a very declining market situation. So just because you and I are used to inflationary spirals, doesn't mean that every market has inflationary spirals. And it doesn't also imply that simply because the owner submits a budget-based rent increase, or a budget-based request for a fair rental value or basic rental value, that in fact that does not allow for, that it doesn't allow sufficient cushion. When we look at the regulations, we, when processing a request, find that, really, that there can be requests, and that they would be processed. And the next paragraph says, after HUD has considered the request for an increase, it will furnish them all, Joe, a written statement of the reasons for approval, adjustment, upward or downward disapproval. There's something missing here. Well, there's no obligation to respond. In order to even fall within those regulations, you must submit a request within the meaning of the regulations. And a request includes the initial submission, which the September 1997 document was. It also requires a posting of the intent to increase the rent. And then the submissions that are provided by the tenants within 30 days must then be provided to HUD for some explanation as to why they were not. But you're arguing an issue that was not before. That's correct, Your Honor, but I'm trying to explain why, in this instance, there wasn't even a rent increase request submitted. But if there was no rent increase submitted, which met all of the regulatory bases for the rent increase, all t's were crossed, and all the i's were dotted, why didn't the agency send a letter back to them saying, you have not properly submitted your request. Go back and take a look at the regulation. But they just sat quietly by the sidelines and said absolutely nothing. Your Honor, we were not able to determine why there was no action. I mean, for the purposes of the mailbox rule, we agreed that we received it. But there is no indication in the record below who received it, when it was received, and why no action was taken. So I can't really address why in this instance there was nothing done. There were foreclosure proceedings instituted in March of 1998, so fairly soon after this request was submitted, HUD initiated its foreclosure proceedings, pursuant to its underlying note with this particular owner. The owner came into the property as a substitute owner because the previous owner had basically failed to pay its obligation. So St. Christopher came in and obligated itself to pay back the old mortgage payments that had not been paid before. And because these weren't paid, HUD had taken the position that it wasn't obligated to act on its rent increase. This was back in 1988. With respect to the takings claim, do you think that they have any basis for a takings claim under these circumstances? No, Your Honor, we do not. We made the arguments in our brief, and I stick with those arguments in terms of whether or not this was even a sovereign act by the agency in particular. They were operating in a commercial capacity, not in a sovereign capacity. But even if we got to the point of examining this as a taking, there was really no change in regulation that you could call a taking action here. It was really that the two parties were acting as a landlord and a tenant or a landlord and an owner, and it was in a commercial capacity, not in a taking. What about, I mean, we've agreed that there's no discipline before us any longer about whether or not the statute of regulations are in my hand, so they're not. But there are obligations under the regulations. Is there some other way that the other side could enforce that? The option for the owner is, had it complied with the regulations, and I've already pardoned that it hadn't, it could proceed before the district court and take an action to enforce its rights under the statute of regulations. In the case of Judge Thompson? Yes. That would be the option for Thomas and Christie. Thank you very much. Thank you, Ms. Floyd. Any other questions? Mr. Kelly has a couple of little stuff to report. Can I just ask a quick way about considering and answering? Is there a difference? Is there a distinction that needs to be objected to? They're not going to consider the request, not going to answer it, or clearly felt joined. I believe that they are joined, Your Honor. I don't believe it makes a difference. We don't know what the agency did because we sent the materials to them and we never heard back. So we don't know whether they tossed it in the basket. We don't know whether it just sat on someone's desk and disappeared over the course of many subsequent years. That's why we phrased it. It could be either one. I don't believe that they refused to consider or they failed to consider or ignore it. But that is really the threat that we face here today because the judge's opinion is extraordinarily broadly written and could be implied to say that what happened to my client could happen to any party with which HUD is a party, and not just in connection with Section 236 programs. If HUD does not have an obligation in any program to 21d3, which is also a budget-based remedies program, but in many other instances, if the agency is simply allowed to ignore a legitimate request. Well, they're not. There's a way to reasonably remedy that, which is to enter into a contract that obligates them to do it. I think that on the one hand, Your Honor, every contract is required in every single situation which could possibly arise in the regulatory agreement here would be much, much longer. But I think that the issue of raising the rents in a particular situation for real estate funding is a critical element that you're catching. If you don't cover that particular aspect of it, you can't cover your mortgage, you can't cover your expenses of other elements, I would presume that a worrying aspect would be why the government can't sue the minister for deferring the contract. There's no question that they have to do it. All I can tell you, Your Honor, is that this is a critical government contract. This is the form that we're required to use. But if you look at the HUD guidance, HUD already had set in the handbook of guidance, for example, it is your obligation in the field office to make sure that these people have enough money to operate the property, because if they don't, the property will go into default, and we, HUD, will end up having to pay off the mortgage. It seems to me that there is sufficient reason to believe any owner would look at this guidance and believe that HUD is going to live by its own rules. And I would say, moreover, that even if you want to just look at the owner's obligations itself, HUD has an obligation as part of any contract to make sure it does not frustrate the other party's ability to perform its obligations. And here, the owner had an obligation to make sure to operate the property in good condition and to meet the other provisions. But that suggests that there's some obligation for them to approve the requisites. We have no idea whether that's appropriate. But it does have, but since an owner has a right to make an application, in this case, local authority, and since HUD, on the other hand, is the only party who can decide what those rents are, then it seems to me to be an absolutely necessary outcome that HUD must consider, and then either approve or deny. Thank you. Mr. Chairman, I can't tell you how it will come out, but we will consider it, and we will answer it. Thank you, Your Honor. I appreciate it very much.